### HUSSONG DYEING MACH. CO. v. PHILADELPHIA DRYING MACHINERY CO. et al.

(Circuit Court, E. D. Pennsylvania. September 30, 1909.)

EVIDENCE (§ 558*)—CROSS-EXAMINATION OF EXPERT IN PATENT SUIT.

Where the direct testimony of an expert, testifying for complainant in a patent case, was confined to the making of a prima facie case by describing the invention in suit, and the alleged infringing device, and the expression of an opinion as to infringement, defendant cannot, on cross-examination, require him to compare the patent in suit with one in the prior art, which is a matter of defense.

[Ed. Note.—For other cases. see Evidence, Cent. Dig. § 2377; Dec. Dig. § 558.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. On motion to compel witness to answer question. Motion denied.

Howson & Howson, for complainant.

Joseph C. Fraley, for defendants.

J. B. McPHERSON, District Judge. The witness is a patent expert and was called by the complainant. His direct examination was confined to a description and explanation of the inventions in suit, a description of the defendants' machines, and the expression of an opinion that these machines infringed the claims relied upon. His answer to the third question of this examination simply described the devices of the patents. On cross-examination he was asked for the first time whether he was acquainted with the British patent to Pollock, and to this he answered, "Yes." Thereupon the cross-examination proceeded as follows:

"XQ. 20. In giving your definition of the invention set forth in the two patents in suit (see answer to question 3), have you set forth any particulars wherein said invention can be differentiated from the apparatus shown and described in said Pollock British patent?

"A. Yes.

"XQ. 21. Please point out specifically each and every portion of your said answer which is addressed to this particular subject.

"A. My direct examination was simply directed to an explanation of what is set forth in the patents in suit, and a comparison between the subject-matter of said patents and the defendant's machines. Accordingly, no portion of my answers was addressed to the particular subject of comparison between the patents in suit and the Pollock British patent. As the apparatus of the Hussong patents is different from that of the Pollock British patent, my explanation of the patents in suit involved reference to the features possessed by the apparatus of the Hussong patents not present in the Pollock patent. To refer to the matter more specifically would require, on my part, a full discussion and explanation of the Pollock patent and a detailed comparison with the patents in suit.

"XQ. 22. I call your attention to the fact that your answer to question 3 (to which alone my question relates) does not deal with any comparison between the subject-matter of the patents in suit and the defendant's machine, but simply describes and defines the invention of the patents in suit. You have stated (in answer to question 20) that in said answer to question 3 you have set forth particulars wherein the invention can be differentiated from that of the Pollock British patent. I now ask you to refer me to each and every of those particulars.

"A. I could not do that without making a detail comparison between Pollock and Hussong, and that would involve an explanation and discussion of everything set forth in the Pollock patent."

These three questions were all objected to upon the ground that the witness was asked to consider a patent in the prior art and to compare it with the patents in suit. Then followed question 23, which was also objected to, and presents, with the reply of the witness, the point involved in the pending motion:

"XQ. 23. In order that the defendant may be apprised of the exact meaning of the definition given in your answer to question 3, I now ask you to fully and clearly point out these particulars, and am quite willing that, if necessary, you shall make the comparison referred to.

"A. As I cannot answer the question without making a detail comparison between Pollock and the Hussong patents, I decline to answer the question, as instructed by counsel."

'Defendant's counsel attempts to distinguish the cases of Thompson-Houston Electric Co. v. Johns Mfg. Co. (C. C.) 105 Fed. 249, and Æolian Co. v. Simpson-Crawford Co. (C. C.) 157 Fed. 320, where rulings adverse to his position were made by Judge Lacombe and Judge Ward, respectively, contending that the answer of the witness to question 20 opened the door to further cross-examination and justified the defendant in asking the witness to expand that answer, so as to describe in detail the difference between the patents in suit and the British patent to Pollock. The argument is not without force, and is also recommended by the undoubted fact that the testimony in patent causes would often be greatly shortened if the complainant was obliged to disclose at the outset his attitude toward the prior art. As the practice now stands, the complainant's prima facie case may leave the defendant in substantial ignorance on this subject, and' may thus compel him to put in much evidence that turns out afterwards to be useless. The real contest does not ordinarily begin until the defendant puts in the prior art, and under the present practice the complainant thus secures whatever advantage may exist in having the final word in rebuttal upon this matter. But, while these considerations deserve attention whenever a change of future procedure is contemplated either by Congress or by the courts, I do not feel justified in taking such a step on a motion of this kind, and I shall therefore follow the foregoing cases in declining to compel the witness to answer the question referred to. His answer to question 20 is satisfactorily explained by the answers to questions 21 and 22, and I think the clear intent of question 23 was to introduce the Pollock patent on cross-examination, in spite of the fact that no ground for such a course could be found in the direct examination of the witness. As already intimated, thus to widen the scope of cross-examination may perhaps be a desirable innovation, but to permit it now would be at variance with what is at present the settled practice.

The motion is refused. ·